# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIEL DICIOCCIO** individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 2:12cv289 **Electronic Filing** |
| **PNC BANK, NATIONAL ASSOCIATION,** | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

September 20, 2013

## I. INTRODUCTION

Plaintiff, Daniel DiCioccio ("DiCioccio" or "Plaintiff") on behalf of himself and all others similarly situated, filed a Complaint against Defendant, PNC Bank, National Association ("PNC" or "Defendant"), alleging violation of the Electronic Fund Transfer Act ("EFTA"), 15 U.S. C. § 1693 *et seq.* based on PNC's alleged failure to affix proper fee notices on two (2) PNC automated teller machines ("ATMs") located at Bally's casino in Atlantic City, New Jersey. Plaintiff has filed a Motion for Partial Summary Judgment and a Motion to Certify Class. PNC has filed a Motion for Summary Judgment. The parties have filed their respective responses and the motions are now before the Court.

## II. STATEMENT OF THE CASE

PNC is an automated teller machine operator, as that term is defined by 12 C.F.R. § 205.16 (a), which states: "Automated teller machine operator means any person that operates a teller machine at which a consumer initiates an electronic fund transfer or a balance inquiry and that does not hold the account to or from which the transfer is made, or about which the inquiry

is made." Pretrial Stipulation ¶ 1. In January and February of 2012, PNC owned and operated two (2) ATMs, numbered PN1980 and PN2534, in Bally's casino ("Bally's") in Atlantic City, New Jersey. Pretrial Stipulation ¶ 2; Plaintiff's Concise Statement of Material Facts ("Plaintiff's CSMF") ¶ 1.

On January 8, 2012, Plaintiff made two (2) cash withdrawals[1] from PNC's ATM No. 1980 at Bally's for which he was charged a $5.00 fee for each separate withdrawal. Plaintiff's CSMF ¶ 2; PNC's Concise Statement of Material Facts ("PNC's CSMF") ¶¶ 2 & 4. At the time Plaintiff made his withdrawals from ATM No. 1980, a notice was posted on the ATM directly under the card slot which read: "PNC Bank may charge a $2.50 fee, to U.S. cardholders for withdrawing cash. This fee is added to the amount of your withdrawal in addition to any fees that may be charged by your financial institution." Plaintiff's CSMF ¶ 3. Before each of the above transactions was completed, Plaintiff was given an on-screen notice which read: "This PNC bank terminal may charge a fee of $5.00 for a cash withdrawal. This charge is in addition to any fees that may be assessed by your financial institution." Plaintiff's CSMF ¶ 5. In order to complete the withdrawal transactions, Plaintiff accepted the $5.00 fee by pressing a button on the ATM. Plaintiff's CSMF ¶ 6; PNC's CSMF ¶¶ 3 & 5.

At 2:46 p.m. on February 19, 2012, Plaintiff made a cash withdrawal from PNC's ATM No. 1980 at Bally's, the same ATM he used twice on January 8, 2012, and he was charged a $5.00 fee for the withdrawal. Plaintiff's CSMF ¶ 8; PNC's CSMF ¶ 6. At 3:41 p.m. on February 19, 2012, Plaintiff made a cash withdrawal from PNC's ATM No. 2534 at Bally's and he was charged a $5.00 fee for the withdrawal. Plaintiff's CSMF ¶ 15; PNC's CSMF ¶ 8. At the time Plaintiff made his withdrawal from ATM No. 2534, a notice was posted on the ATM directly

---

[1] The first withdrawal occurred at 5:16 p.m. and the second withdrawal occurred at 5:45 p.m.

under the card slot which read: "PNC Bank may charge a $2.50 fee, to U.S. cardholders for withdrawing cash. This fee is added to the amount of your withdrawal in addition to any fees that may be charged by your financial institution." Plaintiff's CSMF ¶ 16. At 3:48 p.m. on February 19, 2012, Plaintiff made another cash withdrawal from PNC's ATM No. 1980 at Bally's, and he was charged a $5.00 fee for the withdrawal. Plaintiff's CSMF ¶ 8; PNC's CSMF ¶ 10.

Before each of the above transactions was completed, Plaintiff was given an on-screen notice which read: "This PNC bank terminal may charge a fee of $5.00 for a cash withdrawal. This charge is in addition to any fees that may be assessed by your financial institution." Plaintiff's CSMF ¶ 12. In order to complete the withdrawal transactions, Plaintiff accepted the $5.00 fee by pressing a button on the ATM. Plaintiff's CSMF ¶¶ 13 & 19; PNC's CSMF ¶¶ 7, 9 & 11.

On March 8, 2012, Plaintiff initiated this action against PNC alleging violations of EFTA's notice requirements. Plaintiff now seeks summary judgment on the issue of liability contending that there are no issues of material fact, and as a matter of law, PNC violated EFTA's ATM fee notice requirements by disclosing a fee on the outside of the ATM that was different than the ATM's on-screen fee notice. PNC contends that it is entitled to summary judgment because: (1) it was in compliance with EFTA's fee notice requirements; (2) it has established the safe harbor defense available under EFTA; and (3) it has established that it is protected from liability by the EFTA provision governing unintentional violations.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled

to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.,* one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

## IV. DISCUSSION

EFTA requires an automated teller machine operator to notify a consumer that a fee will be charged for an ATM transaction or a balance inquiry and to disclose the amount of the fee. 12 C.F.R § 205.16(b); *see* 15 U.S.C. § 1693b (d)(3)(A). Two levels of notice are required and the consumer must be free to decide, after receiving the notices, whether to proceed to incur a terminal usage fee. 12 C.F.R § 205.16(c); *see* 15 U.S.C. § 1693b (d)(3)(B). In relevant part, § 1693b (d)(3) states:

> **(3) Fee disclosures at automated teller machines**
> **(A)  In general**
> The regulations prescribed under paragraph (1) shall require any automated teller machine operator who imposes a fee on any consumer for providing host transfer services to such consumer to provide notice in accordance with subparagraph (B) to the consumer (at the time the service is provided) of—
> (i)  is imposed by such operator for providing the service; and
> (ii) the amount of any such fee
>
> **(B)  Notice requirements**
> **(i) On the machine**
> The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.
>
> **(ii) On the screen**
> The notice required under clauses (i) and (ii) of subparagraph (A) with respect to any fee described in such subparagraph shall appear on the screen of the automated teller machine, or on a paper notice issued from such machine, after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction.

15 U.S.C. § 1693b (d)(3)[2].

Further, the regulations promulgated pursuant to EFTA notice requirements provide in relevant part:

> (c) Notice requirement. To meet the requirements of paragraph (b) of this section [requiring notification of a terminal usage fee and the amount of the fee], an automated teller machine operator must comply with the following:
>
> > (1) On the machine. Post in a prominent and conspicuous location on or at the automated teller machine a notice that:
> >
> > > (i) A fee will be imposed for providing electronic fund transfer services or for a balance inquiry; or
> > >
> > > (ii) A fee may be imposed for providing electronic fund transfer services or for a balance inquiry, but the notice in this paragraph (c)(1)(ii) may be substituted for the notice in paragraph (c)(1)(i) only if there are circumstances under which a fee will not be imposed for such services; and
> >
> > (2) Screen or paper notice. Provide the notice required by paragraphs (b)(1) and (b)(2) of this section either by showing it on the screen of the automated teller machine or by providing it on paper, before the consumer is committed to paying a fee.

12 C.F.R. § 205.16(c). To comply with § 1693b (d)(3)(B) then, the ATM operator must simply: (1) provide notice in a prominent and conspicuous location on the machine that **a fee will or may be imposed**; and (2) indicate the amount of that fee either on the screen or in paper form while the consumer is able to cancel the transaction. *Id.*; *See also* 12 C.F.R. § 205.9(a)(1) (displaying the fee on a screen provides adequate notice, as long as a consumer is given the option to cancel the transaction after receiving notice of a fee).

---

[2] In late 2012, legislation was passed that amended EFTA by deleting Section 1693b (d)(3)(B)(i) thereby eliminating the "on the machine" notice requirement. *See* Electronics Fund Transfer Act Amendment, Pub. L. No. 112-216, 126, stat. 15990 (to be codified at 15 U.S.C. § 1693b (d)(3)(B).

6

The ATM operator may not impose a fee unless the consumer receives the above notice and "elects to continue in the manner necessary to effect the transaction after receiving such notice." 15 U.S.C. § 1693b (d)(3)(C); 12 C.F.R. § 205.16(e). Failure to comply with the notice requirements makes the financial institution liable to the consumer in an amount equal to actual damages, statutory damages, costs, and reasonable attorney fees. 15 U.S.C. § 1693m (a). In a case brought by an individual consumer, the financial institution is liable for statutory damages in "an amount not less than $100 nor greater than $1,000." 15 U.S.C. § 1693m (a)(2)(A). In a class action, there are no minimum statutory damages for each class member and the total statutory damages "arising out of the same failure to comply by the same person shall not be more than the lesser of $ 500,000 or 1 per centum of the net worth of the defendant . . . ." 15 U.S.C. § 1693m (a)(2)(B).

A. <u>The Notices on the Bally ATMs</u>

During the time period relevant to this action, PNC retained ATA Services, Inc. ("ATA") to regularly inspect its ATMs to ensure the ATMs had the appropriate notices. PNC's CSMF ¶ 13; PNC Appendix Ex. A–Declaration of Gordon Bramwell ("Bramwell Decl.") ¶ 3. If fee notices were missing, ATA was to replace such notices, and PNC supplied ATA with extra fee notices for this purpose. *Id.* Following its ATM inspections, ATA reported the results of the inspections to PNC by posting such results to a website maintained by ATA and accessible to PNC. *Id.*

Results of the inspections of PNC ATMs No. 1980 and No. 2534 located in the Bally's casino are as follows:

- On May 14, 2010, ATA conducted an inspection of PNC ATM No. 1980 and PNC ATM No. 2534 and installed a gray fee notice on each that read: "PNC may charge a fee, as indicated on the ATM screen, to cardholders for withdrawing cash. This fee is added to

7

the amount of your withdrawal and is in addition to any fees that may be charged by your financial institution." The notices appear to have been placed over the old "$2.50 fee notice" and were located immediately below the card slot. PNC's CSMF ¶¶ 14-16; Bramwell Decl. 4-6 and Ex. 1-4; PNC Appendix Ex. B–Declaration of Justin Newbold ("Newbold Decl.") ¶¶ 6-8 and Ex. 1-4.

- On March 13, 2011, ATA conducted an inspection of PNC ATM No. 1980 and PNC ATM No. 2534. PNC's CSMF ¶¶ 17-19; Bramwell Decl. 7-9; Newbold Decl. ¶¶ 9-11. Comparing the pictures taken on May 14, 2010, to the pictures taken on March 13, 2011, it appears that each of the ATMs at issue have a new darker colored notice placed to the right of the keypad and below the card slot, but the gray notices attached on May 14, 2010 immediately below the card slots, are missing. *See* Bramwell Decl. Ex. 5-8 and Newbold Decl. Ex. 5-8. The new notices read: "PNC may charge a fee, as indicated on the ATM screen, to cardholders for withdrawing cash. This fee is added to the amount of your withdrawal and is in addition to any fees that may be charged by your financial institution."

- On March 8, 2012, Plaintiff filed the Complaint in the instant action alleging that he was charged a $5.00 fee for his use of the Bally ATMs, but the notice on the ATM's indicated that "PNC may charge a $2.50 fee . . ." PNC's CSMF ¶ 20; Bramwell Decl. ¶ 10. PNC promptly removed the "$2.50 fee notice" from each of the Bally ATMs. PNC's CSMF ¶ 21; Bramwell Decl. ¶ 11 and Ex. 9.

- On April 24, 2012, subsequent to the Plaintiff's use of the ATMs at issue, ATA conducted another inspection of PNC ATM No. 1980 and PNC ATM No. 2534. PNC's CSMF ¶ 23; Bramwell Decl. ¶ 13 ; Newbold Decl. ¶ 12. ATA reported that the fee notice

8

on ATM No. 1980, which had been observed by ATA during its inspection on March 13, 2011, was missing. *Id.* ATA installed a new fee notice on PNC ATM No. 1980. *Id.*, *also see* Bramwell Decl. Ex. 10 & 11 ; Newbold Decl. Ex. 9 & 10. ATA also took pictures of ATM No. 2534 on April 24, 2012, and the pictures show that the same notice that was on ATM No. 2534 on March 13, 2011, was on ATM No. 2534 on April 24, 2012. Bramwell Decl. Ex. 12 & 13; Newbold Decl. Ex. 11 & 12.

Based on the above, at all times relevant to this action there were "on the machine" notices on the PNC's Bally ATMs. When Plaintiff made his withdrawals from PNC ATM No. 1980, only the "$2.50 fee notice" was attached, but when Plaintiff made his withdrawals from PNC ATM No. 2534 it appears that both the "$2.50 fee notice" and the notice attached on March 13, 2011, were "on the machine".

B. PNC's Conflicting Fee Notices and EFTA

PNC argues that because EFTA does not require disclosure of any fee amount on the on-machine notice, but only requires disclosure that a fee will be charged, it did not violate EFTA in this instance. Plaintiff suggests, however, that PNC's argument was specifically rejected in the context of EFTA in *Burns v. First American Bank*, 2005 U.S. Dist. LEXIS 9485 (N.D. Ill. April 28, 2005), an unpublished district court decision which held that, for purposes of surviving a motion to dismiss[3], an allegation of conflicting fee notices is sufficient to allege a violation of the EFTA. *Id.* at *14-16.

---

[3] With regard to the motion to dismiss, the District Court specifically stated:

> In a motion to dismiss we must examine not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Plaintiffs have alleged that because they received two contradictory disclosure statements that the statements were improper under EFTA. Whether or not FAB's notices violate EFTA is a factual issue and though the claim may eventually fail

9

In *Burns*, the court held that the EFTA was violated because the exterior notice posted on the outside of the ATM stated that a $ 2.00 fee would be charged but, after the on-screen fee notice informed the customer that a $ 2.50 fee would be charged to non-First American customers, the customers were actually charged $ 2.50. *Id*. at *2. Referencing the section heading of 15 U.S.C. § 1693b (d)(3)(C) which read: "[p]rohibition on fees not properly disclosed . . .", the court concluded that ". . . an inexact, inaccurate, or incomplete notice may result in the consumer not being well-informed, or lacking understanding and thus may be considered **improper**." *Id*. at *10 (emphasis added).

This Court disagrees with the reasoning of the *Burns* court. There is no language in the statutory text of § 1693b (d)(3), or in the relevant regulation, that specifically references "proper" notice on the outside of the ATM. The plain language of the statute simply requires "on the machine" notice to disclose that a fee will or may be imposed for the electronic transaction. The construction by the court in *Burns*, and championed by Plaintiff, creates an EFTA notice requirement, based on a section heading, that is additional to the specific requirements of the statutory text. Moreover, it is a well-settled rule of statutory interpretation that titles and section headings cannot limit the plain meaning of statutory text where that text is clear. *United States v. Pendleton*, 658 F.3d 299, 305 (3d Cir. 2011)(citing *M.A. ex rel. E.S. v. State-Operated Sch. Dist.*, 344 F.3d 335, 348 (3d Cir. 2003); s*ee also Demore v. Kim*, 538 U.S. 510, 535 (2003) ("The title of a statute has no power to give what the text of the statute takes away."); *I.N.S. v. St. Cyr*, 533

---

> on the facts, assessing factual support for a suit is not the office of Rule 12(b)(6). Because Plaintiffs have raised this question of fact, they should be entitled to present evidence to establish that such confusion violates 15 U.S.C. § 1693. (citations and quotation marks omitted)

*Id.* at 14-15.

10

U.S. 289, 308 (2001) ("[A] title alone is not controlling.") (citing *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 212 (1998)).

Plaintiff also relies on the holding of the Court of Appeals for the Seventh Circuit that consumer disclosure statutes require accurate disclosure. *Gibson v. Bob Watson Chevrolet-Geo*, 112 F.3d 283 (7th Cir. 1997). In *Gibson*, the court reviewed provisions of the Truth in Lending Act ("TILA"), and held that "[s]ection 1638(a)(2)(B)(iii). . .requires disclosure - meaning. . .accurate disclosure." *Id.* at 285. The *Burns* court also relied upon examples of how courts handled disclosure requirements under TILA and the Fair Debt Collection Practices Act ("FDCPA") in support of its analysis of EFTA.

This Court finds that the notice requirements of EFTA are distinguishable. During the time relevant to this action, EFTA required two (2) notices. The "on the machine" notice, which has been repealed, was required to inform the consumer of "the fact that a fee" may be imposed for using the services of the ATM. *See* 15 U.S.C. § 1693b (d)(3)(A)(i); 12 C.F.R. § 205.16(c). Such notice informs the consumer that they may be subject to a fee for use of the ATM before the consumer inserts his or her card to begin a transaction. There is no requirement that such notice disclose the amount of the fee. The "on the screen" notice discloses the amount of the fee to be charged and the consumer then has an option to accept the fee or decline and end the transaction. EFTA, therefore, has an on screen failsafe that both informs the consumer of the exact fee to be charged and allows the consumer to opt out of the transaction.

In this instance, the notices performed as design. Before he inserted his card into the Bally ATMs, Plaintiff was aware of the fact that he may be subject to a fee. Plaintiff admits that during the transactions he was given an on-screen notice regarding the $5.00 transaction fee. In order to complete each transaction, Plaintiff had to accept the $5.00 fee before the transaction could continue. He chose to accept the fee on each occasion. Moreover, Plaintiff agrees that

before he completed the transactions, he understood that he was going to be charged a $5.00 fee. *See* PNC Appendix Ex. D- DiCioccio Deposition pp. 33-34.

Tellingly, the Board of Governors of the Federal Reserve published its Final Rule and official staff interpretation regarding the 2006 amendments to EFTA, which explained EFTA's disclosure requirements, in relevant part, as follows:

> The final rule clarifies the two-part disclosure scheme established in Section 904(d)(3)(B) of the EFTA. The first disclosure, on ATM signage posted on or at the ATM, **allows consumers to identify quickly ATMs that generally charge a fee for use. This disclosure is not intended to provide a complete disclosure of the fees associated with the particular type of transaction the consumer seeks to conduct.** Until a consumer uses his or her card at an ATM, the ATM operator does not know whether a surcharge will be imposed for that particular consumer. Rather **it is the second, more specific disclosure, made either on the ATM screen or on an ATM receipt, that informs the consumer before he or she is committed to the transaction whether, in fact, a fee will be imposed for the transaction and the amount of the fee** . . . .

*See* 71 F.R. 1638, 1656 (emphasis added).

The Court finds that the "$2.50 fee notice" on the PNC ATMs was sufficient to inform Plaintiff of the fact that he may be charged a fee for use of the ATMs' services, and therefore was not a violation of EFTA. To find otherwise is an unreasonably harsh sanction that places liability on an automated teller machine operator for violating a requirement that has no basis in the statutory text of § 1693b (d)(3).

Because the Court will grant PNC's motion for summary judgment, it must deny Plaintiff's motion for partial summary judgment[4], and deny as moot Plaintiff's motion for class certification.

---

[4] Plaintiff's motion for partial summary judgment would have been denied in any event because material issues of fact exist regarding PNC's safe harbor defense and its bona fide error defense.

## V. CONCLUSION

Based on the foregoing, PNC's motion for summary judgment will be denied. Plaintiff's motion for partial summary judgment will be denied and Plaintiff's motion to certify class will be denied as moot. An appropriate Order follows.

<u>s/ David Stewart Cercone</u>
David Stewart Cercone
United States District Judge

cc: R. Bruce Carlson, Esquire
Carlos R. Diaz, Esquire
Jamisen A. Etzel, Esquire
Sunshine R. Fellows, Esquire
Thomas L. Allen, Esquire
James L. Rockney, Esquire
Justin J. Kontul, Esquire

(*Via CM/ECF Electronic Mail*)